Shoffstal v. Elder.

## DAMAGES—FRAUD—JURY.

[Sandusky (6th) Court of Appeals, October, 1913.]

Kinkade, Richards and Chittenden, JJ.

*FRANK S. SHOFFSTAL ET AL. v. ROBERT A. ELDER ET AL.

**1. Three-fourths Jury Provision Relates to the Remedy and Became Effective May 14, 1913.**

> The amendment to Sec. 11455, G. C., 103 O. L. 11, passed February 6, 1913, and which went into effect on May 14, 1913, providing that "in all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number," relates to the remedy and is to be construed as if Sec. 26 G. C. was a part thereof.

**2. Act not Applicable to Actions Pending May 14, 1913.**

> The words, "in all civil actions," being general in character, are not sufficient to make the statute applicable to actions pending when the act became effective, but an express provision is necessary to accomplish such result, and the act as amended applies only to civil actions commenced on or after May 14, 1913.

**3. Measure of Damages for Fraud and Deceit in Sale of Personal Property is Difference between Value Represented and Actual Value at Purchase.**

> In an action to recover damages for fraud and deceit in the sale of personal property, the measure of damages is the difference between the value of the property as it was represented to be and its actual value at the time of the purchase. (Linerode v. Rasmussen, 63 Ohio St. 545, followed).

[Syllabus by the court.]

ERROR to common pleas court.

*Jesse Vickery*, for plaintiff in error.

*Parkhurst & Vickery* and *Garver & Garver*, for the defendant in error.

## CHITTENDEN, J.

The action in the common pleas court was brought by the plaintiffs in error as plaintiffs against the defendants to recover damages alleged to have been sustained because of fraud and deceit practiced by the defendants in the sale to plaintiffs of a certain stock of merchandise. The transaction out of which the damage is said to have risen was the trade or ex-

---

*Reversing, Shoffstahl v. Elder, 23 Dec. 485.

change of certain real estate in Toledo for a stock of dry goods, millinery and fixtures in the city of Bellevue, Ohio, made on or about August 24, 1912. It is claimed by the plaintiffs that the defendants fraudulently represented the stock of goods to be of good quality, and that it would invoice $6,500. It is also claimed that the defendants represented that they had an established trade, and that their sales would amount to $12,000 per year. The plaintiffs claimed that these representations were false, particularly with respect to the amount of the inventory of such goods, and they alleged that the goods did not at the time invoice to exceed $1,516. They claimed that they relied upon the representations of the defendants in making the exchange, and they have been damaged in the sum of $3,000. The real estate in Toledo owned by the plaintiffs and by them deeded to the defendants in exchange, was encumbered by a mortgage of $2,000, and as a part of the bargain the plaintiffs agreed to and did execute and deliver to the defendants a promissory note for the sum of $2,000, secured by a chattel mortgage upon the stock of goods conveyed to them by the defendants. It appears that thereafter, to wit, December 31, 1912, the defendants discovered some defect in the form of the chattel mortgage, and requested the plaintiffs to execute a new note and mortgage in lieu of those theretofore given. They thereupon did execute a new mortgage and ten new notes, aggregating the sum of $2,000, which were secured by the mortgage. and another note for $40, representing the accrued interest, which was unsecured.

On March 21, 1913, the plaintiffs commenced this action in the court of common pleas. The defendants by their answer denied all the allegations of the petition charging fraud in the transaction, and set up a cross petition in which they sought to recover judgment upon the promissory notes, and also prayed for a foreclosure of the chattel mortgage securing the same. The cause went to trial on May 6, 1913; the court charged the jury on May 20, and on May 21 the verdict was returned, signed by ten jurors who had agreed upon the verdict in which the other two jurors did not concur. The verdict of the jury was in favor of the plaintiffs upon the cause of action set up in

Shoffstal v. Elder.

their petition, and their damages were assessed at no dollars. Upon the causes of action set up in the cross petition of the defendants, the verdict was in favor of the defendants for the sum of $2,069.23, that being the full amount of the defendants'' claim. A motion for a new trial was filed by the plaintiffs, which was overruled by the common pleas court. and judgment was entered upon the verdict, in favor of the defendants. Thereupon the plaintiffs prosecuted error in this court, and present a bill of exceptions containing all the evidence.

The first question challenging the attention of the court is as to whether or not the court was in error in charging the jury that when nine of their number had agreed upon a verdict, it might be returned into court. The amendment to Sec. 11455 G. C., providing that ''in all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number,'' was passed by the general assembly on February 6, 1913. It was approved by the governor on February 12, 1913, and was filed in the office of the secretary of state February 13, 1913. By provision of the constitution, Art. II, Sec. 1c, the law as passed by the general assembly did not become effective until ninety days after it had been filed by the governor in the office of the secretary of state. It therefore did not become effective until May 14, 1913. It will be seen, therefore, that the cause was upon trial at the time when the amendment became effective. It is claimed by the plaintiffs. that the amendment did not affect the case on trial because it. was pending at the time the law went into effect, and that the amendment contained no provision expressly making it applicable to pending cases. The amendment providing for a verdict. by less than the unanimous agreement of the jurors is one clearly remedial in its nature. At the time of its passage Sec. 26, G. C., was in full force and effect. The section reads as. follows:

''Whenever a statute is repealed or amended, such repeal or amendment shall in no manner affect pending actions, prosecutions, or proceedings, civil or criminal, and when the repeal or amendment relates to the remedy, it shall not affect pending actions, prosecutions, or proceedings, unless so expressed,.

nor shall any repeal or amendment affect causes of such action, prosecution, or proceeding, existing at the time of such amendment or repeal, unless otherwise expressly provided in the amending or repealing act.''

The question presented is not one calling for construction of any constitutional provision, but only for a construction of the amended statute, number 11455, as it may be affected by Sec. 26, G. C.

Section 5, Art. I, of the constitution of the state, providing that ''the right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury,'' does not by its terms enact that a verdict, concurred in by three-fourths of the jury, shall be sufficient. The constitutional provision only conferred upon the legislature the power to abolish the common law verdict requiring the unanimous agreement of the jury, and substituting therefor a verdict to be concurred in by not less than three-fourths of the jury. The amendment in question was passed by the legislature with the evident purpose of carrying into effect this constitutional provision.

In *State* v. *Rabbitts,* 46 Ohio St. 178 [19 N. E. Rep. 437], the court held:

''The statute relates to the remedy, and must be construed in connection with Sec. 79, R. S.; so that, the language therein contained, 'that in every instance where a judge of the court of common pleas is interested in the event of a cause * * * pending before the court in any county in his district,' it may, 'unless there is a judge residing in the county not so interested,' be removed to another county, does not, though general in form and expressed in the present tense, apply to a pending action, where the state of facts, constituting such ground of removal, existed at the adoption of the statute. No generality of language used in an amendment relating to the remedy, will, under Sec. 79 R. S. make it applicable to a pending action, prosecution or proceeding; to make it so applicable the intention must be expressed in a provision to that effect.''

In discussing the effect of Sec. 26, G. C. (formerly Sec. 79

R. S.) the Supreme Court in *Travelers' Ins. Co.* v. *Myers,* 59 Ohio St. 332, 333 [52 N. E. Rep. 831], says:

"This section of the statutes was adopted for the reason that, though the legislature is denied by the constitution the power to pass retroactive laws, it had been held, that this did not include laws relating to the remedy; and so to prevent abuses, of which there were many and somewhat discreditable instances, it was provided that where laws relating to the remedy were adopted they should not affect pending actions, prosecution or proceedings, nor existing causes of action, prosecution, or proceedings unless otherwise expressly made so in the amending or repealing act. The policy of the section suggests that it should receive a liberal construction to the end that its policy be not subverted; and that an act within its provisions should by clear language express that it was intended to apply to each classification of Sec. 79—cause of action, prosecution and proceeding; and if it fails to apply to all, it should be applied no further than the language employed requires. *State* v. *Rabbitts,* 46 Ohio St. 178."

The same effect is the decision in *Charles* v. *Fawley,* 71 Ohio St. 50 [72 N. E. Rep. 294], also *State* v. *Barlow,* 70 Ohio St. 374 [71 N. E. Rep. 363].

In interpreting a constitutional provision, the Supreme Court in the case of *Hupp* v. *Oil & Nat. Gas. Co.* 88 Ohio St. 61, used the following language:

"Courts for the review of legal proceedings are, and have been, an essential part of our judicial system. Valuable rights acquired under a system in full and legal operation should not be held by the court to have been withdrawn and destroyed, unless by express language or by provisions, from which it must follow, by necessary implication, that such result was intended. This doctrine was upheld in *Commonwealth* v. *Balph,* 111 Pa. St. 379; Endlich, Interp. Stat. Sec. 522."

The common law jury of twelve men, with the necessity for a unanimous verdict, has been a part of the judicial system of this state since its organization, and the right to have a proper case submitted to such jury has been a right enjoyed by all citizens; and, applying the language above quoted, such

right "should not be held by the court to have been withdrawn and destroyed, unless by express language or by provisions from which it must follow, by necessary implication, that such result was intended."

In Art. IV, Sec. 2, and Sec. 6, and the schedule, Sec. 20, of the constitution as adopted by the vote of the people on September 3, 1912, an intention upon the part of the people to preserve existing rights in pending cases, is clearly shown. It is contended that the words, "in all civil actions," clearly indicate an intention upon the part of the legislature to make the amendment applicable to pending cases. We cannot agree with this contention. The language is general in its character, and is not to be held to take the place of the express language required by Sec. 26, G. C., in order that it may be made applicable to pending actions. It will be noted that the Supreme Court has distinctly stated that when construing a statute of this character it must be read as though Sec. 26 was in fact a part of the section construed. The words quoted seem rather to have been used so that the amended section would agree in its wording with the words used in Sec. 5, Art. I, of the constitution, conferring the right upon the general assembly to enact the amendment. It also has the effect of specifically limiting the three-fourths jury verdict to civil actions, and to no other class of actions or proceedings.

It is our conclusion that Sec. 11455, G. C. as amended by the act passed February 6, 1913, does not apply to actions pending at the time of its going into effect, to wit, May 14, 1913. If it is deemed wise that the amendment should be made applicable to pending actions, it should be so determined by the legislature in express terms, as the power to make it so applicable is legislative and not judicial in character.

It follows that the trial court was in error in charging the jury that a verdict might be returned upon the agreement of nine or more of their number. The judgment will therefore be reversed and remanded for a new trial.

In view of this result, certain other errors complained of by the plaintiffs should be discussed in this opinion. At the conclusion of the evidence and before argument, the court was,

Shoffstal v. Elder.

requested by the defendants to give certain written instructions to the jury. Some of these requests related to the claim of plaintiffs that there was a representation as to what the stock would invoice. No question has been made as to the sufficiency of the allegations contained in the petition in this respect. There may be some question as to whether an allegation that there was a representation that the stock of goods would invoice a certain amount, is the equivalent of a representation that the stock was of a given value, unless the allegation is accompanied with the further statement that it was understood between the parties to be the equivalent of a statement of its value.

Special instruction number 7 in substance is to the effect that the plaintiffs had no right to rely upon the statements of the defendants, their interests being adverse to those of the plaintiffs, if the plaintiffs were so situated that they could, in the exercise of ordinary diligence have examined and ascertained whether their statements were true or fraudulent. Whether this would be a correct statement of the law in a proper case need not now be determined; but we are of opinion that it is not a correct statement of the law as applied to this case, the evidence showing that the goods about which the representations were made consisted of a stock of dry goods and millinery; that the representations went not only to the quantity and quality of the stock, but also to the volume and extent of the business and the amount that the stock would invoice. We think that under these facts as shown by the evidence, the request as framed might have been misleading to the jury, and should not have been given.

The tenth written instruction is to the effect that the good will of the business was a salable asset in connection with the tangible property of the business, and that it is not necessary that the term, "good will," be specifically mentioned in order to convey the same. This instruction would imply that there was an issue in the case as to whether or not the good will was included in the sale; whereas, by the answer of the defendants and the reply of the plaintiffs, it is admitted that the good will was included in the sale of the premises. The giving of

this instruction might be harmless were it not for the fact that there was a contention as to whether or not the good will might properly be included in an inventory of the stock. It is entirely clear that good will is not properly included as an item in the inventory of a stock of merchandise. The instruction, therefore, as framed, we think may have been misleading, and should not have been given.

We disapprove of the eleventh instruction as given, as being calculated to mislead the jury. It fails to state clearly that if the jury find from the facts proven that the plaintiffs, by the giving of the new notes and mortgage, thereby intended to waive any claim for damages arising from false representations, the plaintiffs could not recover in this action.

The only other error which we think needs to be discussed at this time is the error claimed to have been made in charging the measure of damages. The court charged that the measure of damages was the difference in value between the house and lot of the plaintiffs and the value of the stock of goods of the defendants on the date of the exchange. Counsel for neither party claimed any different rule. This charge was erroneous. The correct rule of damage is laid down by our Supreme Court in *Linerode* v. *Rasmussen*, 63 Ohio St. 545 [59 N. E. Rep. 220]. It is the difference between the value of the stock of goods as it was at the time of the exchange, and its value if it had been as represented by the defendants. This rule of damage has been followed by this court in numerous decisions.

The judgment of the court of common pleas will be reversed and the cause remanded for a new trial.

**Kinkade** and **Richards, JJ.**, concur.